IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CASE NO. 23-276 |
| DONAVON PARISH | : | |

**GOVERNMENT'S PLEA MEMORANDUM**

I.   **INTRODUCTION**

In April and May of 2022, defendant Donavon Parish terrorized the Jewish community in the Eastern District of Pennsylvania, and throughout the United States, by repeatedly calling his victims—who were all Jewish or associated with Jewish entities—and communicating antisemitic, hateful and violent messages, such as "gas the Jews," "Heil Hitler … all Jews should burn," and "death to the Jews." In each instance, the defendant used a Voice over Internet Protocol service to mask his true phone number. For his conduct, he was initially charged by Indictment on June 27, 2023. Since that time, the defendant has agreed to be charged by Superseding Information, waiving prosecution by indictment, with one count of cyberstalking, in violation of 18 U.S.C. § 2261A(2), five counts of abuse and harassment using a telecommunications device, in violation of 47 U.S.C. § 223(a)(1)(C), and a special finding under U.S. Sentencing Guideline Section 3A1.1(a) that the defendant intentionally selected his victims as objects of the charged offenses because of the actual and perceived religion of the victims.

The defendant has indicated that he will plead guilty to the Superseding Information, and the parties have signed a plea agreement. A copy of the agreement is attached as Exhibit A.

The government submits this memorandum in advance of the arraignment and plea hearing, which is scheduled for June 18, 2024.

## II.     SUMMARY OF PLEA AGREEMENT

The government and defendant have reached a plea agreement. In summary, the defendant agrees to plead guilty to all six charged counts and the special finding alleged in the Superseding Information. At sentencing, the government will make whatever sentencing recommendation that the government deems appropriate, and will comment on the evidence and circumstances of the case, as well as any other facts relevant to sentencing.

Pursuant to USSG § 6B1.4, the parties have stipulated the following, in sum and substance, that the applicable base offense level as to Count One (relating to victim Business 1) is 18, pursuant to USSG § 2A6.2(a), and the base offense level as to each of Counts Two through Six (relating to victims Synagogues 1 – 3, and Businesses 2 and 3), each Count constituting a separate group, is 6, pursuant to USSG § 2A6.1(a)(2). The parties agree and stipulate that a 3-level upward adjustment under USSG § 3A1.1 is applicable because the defendant intentionally selected Synagogues 1 – 3 and Businesses 1 – 3 as the object of his offenses because of the actual or perceived religion of these victims.

The parties further stipulate that, as of the date of this agreement, the defendant has demonstrated acceptance of responsibility for his offense, making the defendant eligible for a 2-level downward adjustment under USSG § 3E1.1(a). The parties agree and stipulate that, as of the date of this agreement, the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty, thereby permitting the government to avoid preparing for trial and permitting the

government and the court to allocate their resources efficiently, resulting in a 1-level downward adjustment under USSG § 3E1.1(b).

The defendant has also agreed that he will not file any appeal, any collateral attack, or any other writ or motion that challenges the defendant's conviction, sentence, or any other matter relating to this prosecution, except that he may file such appeal or motion if the government files such appeal or motion, or if the Court departs or varies upward from the applicable Guidelines Range in imposing a sentence. The defendant retains the right to file a claim, if otherwise allowed by law, that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance.

The defendant may not withdraw his plea because the Court declines to follow any recommendation, motion, or stipulation by the parties to this agreement. No one has promised or guaranteed to the defendant what sentence the Court will impose. The plea agreement contains all of the promises, agreements and understandings of the parties with respect to the plea.

## III.  ELEMENTS OF THE OFFENSES

To prove a violation of Title 18, United States Code, Section 2261A(2) (cyberstalking) (Count One), the government must demonstrate the following elements beyond a reasonable doubt:

1. The defendant used a facility of interstate commerce;

2. to engage in a course of conduct that places a person in reasonable fear of death or serious bodily injury, or causes substantial emotional distress, either to that person or to a partner or immediate family member;

3. With the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate that person.

*United States v. Gonzalez*, 905 F.3d 165, 180 (3d Cir. 2018), quoting 18 U.S.C. § 2261A(2).

*See also United States v. Fullmer*, 584 F.3d 132, 163 (3d Cir. 2009). The statute defines the required "course of conduct" as "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2).

To prove a violation of Title 47, United States Code, Section 223(a)(1)(C) (abuse and harassment using a telecommunications device) (Counts Two through Six), the government must prove the following elements beyond a reasonable doubt:

1. The defendant made a telephone call or used a telecommunications device, and that call or use was in interstate or foreign communications;

2. The defendant did not disclose his identity; and

3. The defendant did so with the intent to abuse, threaten or harass any specific person.

Under U.S. Sentencing Guideline Section 3A1.1(a) (hate crime motivation) (Special Finding), if the Court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim as the object of the offense of conviction because of the actual or perceived religion of any person, the offense level is increased by three levels.

### IV.  MAXIMUM PENALTIES

The Court may impose the following statutory maximum sentence for cyberstalking: five years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

The Court may impose the following statutory maximum sentence for each count of abuse or harassment using a telecommunications device: two years' imprisonment, one year of supervised release, a $250,000 fine, and a $100 special assessment.

In total, the defendant faces a statutory maximum sentence of 15 years' imprisonment, three years of supervised release, a $1,500,000 fine and a $600 special assessment.

V.     **FACTUAL BASIS FOR THE PLEA**

If the case were to proceed to trial, the government would introduce evidence which would establish the following facts:

In April through May, 2022, the defendant used a telecommunications device, that is a Voice over Internet Protocol ("VoIP") mobile application,[1] a facility of interstate commerce, to disguise his true identity and phone number, and engaged in a course of conduct that caused substantial emotional distress to, with the intent to harass and intimidate, a victim identified as Business 1, and harassed and abused other victims identified as Businesses 2 and 3, and Synagogues 1 through 3, using the same VoIP mobile application. All of his victims were Jewish-owned businesses or synagogues, that is, Jewish houses of worship, and he selected his victims because they were, and/or he believed they were, Jewish. Each of the call recipients were scared, and all of the victims reported the defendant's calls to the police.

At trial, the government would seek to admit records from the VoIP mobile application provider as evidence that the defendant did, in fact, make these calls to the victims, as described below. The government would also seek to admit certain contents of the defendant's mobile device as evidence of his intent and motivation, specifically, evidence of his antisemitic views.

A.   Business 1 (Count One)

From April 24, 2022, through at least April 29, 2022, the defendant used a VoIP mobile application to disguise his phone number, and called Business 1—a Jewish delicatessen located in the Eastern District of Pennsylvania—at least 15 times. On these calls,

---

[1] VoIP technology allows users to transmit the human voice using a broadband internet connection instead of a cellular or analog telephone line.

the defendant spoke to an owner or an employee of Business 1, with the intent to harass and intimidate these individuals, specifically, S.T., B.S. and J.K, because of the victims' actual or perceived affiliation with the Jewish religion. On these calls, the defendant used antisemitic language and referenced the Holocaust and the atrocities committed by the Nazi party under Adolf Hitler, knowing that the violent and horrific imagery evoked by these statements would strike fear and terror in his victims.

      S.T. answered a phone call from the defendant, in which the defendant said to her, "Heil Hitler." S.T. recalled that the caller, using the same phone number, continuously called the deli number. After these calls, S.T. was scared that the defendant would come to the deli to harm S.T. or others – S.T. could not stop thinking about these calls even months after the defendant made them. S.T. believed that the defendant wanted to harm Jewish people.

      B.S. also received several of these phone calls made by the defendant, in which the defendant said, "Heil Hitler. All Jews must die." On another call, the defendant said, "Heil Hitler. Kill k**es." (According to the American Jewish Committee, "k**e" is an offensive, derogatory term for a Jewish person). After these calls, B.S. was afraid, and took steps to make sure the panic button was working. B.S. has worked at Business 1 for many years, and has never received calls like this before.

      J.K. did not personally answer these calls from the defendant, but heard about them from other employees. J.K. is Jewish, and was terrified for weeks after hearing about these calls. J.K. filed a report with the Montgomery County Police Department, and reported the disguised phone number that the defendant had been using. Officer Timothy Woch called the phone number, and the defendant answered. The officer asked the defendant if he had called Business 1, and the defendant said yes, and also said that "all Jews need to die" and "Heil

Hitler." When Officer Woch asked the defendant for his identifying information, he hung up.

    B.   <u>Synagogue 1 (Count Two)</u>

On May 2, 2022, the defendant used a VoIP mobile application to mask his phone number, and called Synagogue 1, a Jewish house of worship located in the Eastern District of Pennsylvania. D.H., who was associated with Synagogue 1, answered. The defendant said to D.H., "we will put you in work camps." Minutes later, the defendant called Synagogue 1 back, and said to D.H., "death to the Jews." The defendant called Synagogue 1 five times. D.H. was terrified, and thought the defendant may be in the vicinity and may harm congregants, staff and others in Synagogue 1. D.H. immediately notified other staff members of Synagogue 1, and they called the police.

Synagogue 1 operated a pre-kindergarten and religious school—these schools were placed on high alert, and teachers took extra precautions, including locking their doors.

    C.   <u>Synagogue 2 (Count Three)</u>

On May 2, 2022, the defendant used a VoIP mobile application to mask his phone number, and called Synagogue 2, a Jewish house of worship located in the Eastern District of Pennsylvania. R.K. and B.B., both associated with Synagogue 2, answered the defendant's calls. The defendant repeatedly said to R.K., "Gas the Jews." R.K. was scared for her life, and was concerned for the safety of everyone else in the synagogue. R.K. called the police. B.B. answered another call made by the defendant later in the same day, and the defendant said to B.B., "Hitler was right. Gas the Jews." B.B. was on the verge of tears, and left shaken after this call.

Synagogue 2 operated a school. After these calls were made, Synagogue 2 did not allow their students to leave the building until their parents arrived at the synagogue and

were visible to the staff.

    D.  Synagogue 3 (Count Four)

On May 2, 2022, the defendant used a VoIP mobile application to mask his phone number, and called Synagogue 3, a Jewish house of worship located in the Eastern District of Pennsylvania. Z.G., who was associated with Synagogue 3, answered. The defendant repeatedly said to Z.G., "Gas the Jews." The defendant also said, "Hitler should have finished the job." Z.G. was scared, and felt threatened. Z.G. called the police to report these calls, and the police came to the synagogue to ensure that Z.G. and Synagogue 3 were safe.

    E.  Business 2 (Count Five)

On April 24 and 28, 2022, the defendant used a VoIP mobile application to mask his phone number, and called Business 2, a delicatessen located in the Eastern District of Pennsylvania. N.C., who was associated with Business 2, answered. The defendant said to N.C. over the phone, "Heil Hitler … All Jews should burn." N.C. hung up the phone. The defendant then called back, and said to N.C., "Heil Hitler … All Jews should burn … All Jews must die, you guys are trash, heil Hitler, you are terrible, fuck you … Heil Hitler." N.C. was scared, and was afraid for the other employees of the deli. N.C. reported the defendant's calls to the police.

    F.  Business 3 (Count Six)

On April 28, 2022, the defendant used a VoIP mobile application to mask his phone number, and called Business 3, a delicatessen located in the Eastern District of Pennsylvania. J.I. and J.M., who were associated with Business 3, answered. The defendant said to J.I., "Gas the Jews." J.I. was afraid. J.I. was terrified that the defendant would come attack the deli. J.I. handed the phone to J.M., to whom the defendant said, "Burn all Jews." J.I. reported the defendant's calls to the police.

VI.     **CONCLUSION**

The United States respectfully submits that this summary of evidence provides a factual basis for a guilty plea by defendant Donavon Parish to all counts of the Superseding Information.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s/ J. Jeanette Kang*
J. JEANETTE KANG
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Government's Plea Memorandum was served by email upon James McHugh, Esq. (counsel for defendant Donavon Parish).


Date: June 11, 2024                                 */s/ J. Jeanette Kang*
                                                                J. JEANETTE KANG
                                                                Assistant United States Attorney